IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **TERRENCE SHEPHERD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.  ) | **Civil Action No. 1:13-13757** |
| ) | |
| **REX BLOCKER,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is the United States Motion to Substitute (Document No. 17.), filed on April 1, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States. (Document No. 19.) On April 10, 2014, Plaintiff filed his Response agreeing to the substitution of the United States. (Document No. 22.)

**PROCEDURAL AND FACTUAL BACKGROUND**

On June 7, 2013, Plaintiff filed an Application to Proceed Without Prepayment of Fees and Complaint seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as defendants: (1) Dr. Rex Blocker, Clinical Director at FCI Edgefield; (2) William Goode, Physician Assistant at FCI McDowell; (3) Carl Hill, Physician Assistant at FCI McDowell; (4) Karen Hogsten, Warden at FCI McDowell; (5) Dr. Hippilito Matos, Clinical Director at FCI McDowell; and (6) Ms.

Ryan, Physician Assistant previously employed at FCI Edgefield. (Document No. 2, p. 2.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference in providing treatment for his knee injury.[1] (Id.) During his incarceration at FCI McDowell, Plaintiff claims that he injured his knee while playing softball. (Id.) Plaintiff states that he reported to sick call on September 21, 2011, complaining of "pain, swelling, and locking of his right knee when he walked." (Id.) Plaintiff states that he was evaluated by PA Goode and "an x-ray was ordered for that day." (Id.) Plaintiff complains that the x-ray was conducted 17 days later, on October 7, 2011. (Id.) Plaintiff acknowledges that the "x-ray was negative, except for joint effusion and mild pre-patellar soft tissue swelling." (Id.) During a Chronic Care visit with Dr. Matos on October 21, 2011, Plaintiff states that he "complained about the pain in his right knee and that the knee was locking when he walked." (Id., pp. 2 - 3.) Plaintiff was then scheduled to have an appointment with PA Hill on December 22, 2013, but "Plaintiff was unable to appear for his scheduled appointment" due to a lock-down. (Id., p. 3.) Plaintiff alleges that even though he "signed up for sick-call" on December 27, 2011, he was not seen by medical staff. (Id.) Plaintiff acknowledges that on January 31, 2012, PA Goode "wrote a consult for Plaintiff to have an MRI." (Id.) Plaintiff, however, complains that the MRI consult "was not brought before the Utilization Review Committee ["URC"] until one month later, on February 27, 2012." (Id.) Although the URC approved the MRI, Plaintiff complains that final approval was not obtained from the Regional Doctor until March 6, 2012. (Id.)

Plaintiff acknowledges that he was evaluated by PA Hill on February 24, 2012 and March 16, 2012. (Id., pp. 3 - 4.) During his Chronic Care appointment on April 4, 2012, Plaintiff alleges

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

that he informed Dr. Matos of the continued pain in his right knee. (Id., p. 4.) Plaintiff's MRI was conducted on April 9, 2012, at the Princeton Community Hospital. (Id.) Plaintiff complains that he did not receive a copy of his MRI report until May 2, 2012. (Id.) Plaintiff contends that the MRI report "stated that Plaintiff had a healed avulsion fracture in his lateral femoral condyle, associated with a partial tear of the proximal attachment of his lateral collateral ligament; . . . mild irregular articular thinning in the central portions of both his femoral condyles." (Id.) Plaintiff had a follow-up appointment with PA Hill on May 3, 2012. (Id., pp. 4 - 5.) PA Hill allegedly informed Plaintiff that he "had an acute enthesopathy of his knee" and recommended that "Plaintiff receive physical therapy to rehabilitate his knee." (Id.) Plaintiff alleges that on May 11, 2012, PA Hill informed Plaintiff that Dr. Matos "agreed with the treatment plan . . . that Plaintiff should receive physical therapy." (Id., p. 5.) Plaintiff further alleges that PA Hill informed him that an orthopedic consult was unnecessary. (Id.)

On July 18, 2012, Plaintiff was transferred from FCI McDowell. (Id.) Plaintiff arrived at FCI Edgefield on August 8, 2012. (Id.) Following his sick call request, Plaintiff was evaluated by PA Ryan on August 13, 2012. (Id.) Plaintiff states that PA Ryan "wrote a consultation request for Plaintiff to see an orthopedist" and informed Plaintiff that PA Hill's "request that Plaintiff receive physical therapy was denied on May 17, 2012, by the URC." (Id.) Plaintiff contends that the "physical therapy request that was denied is the same physical therapy that Defendant Hill had informed Plaintiff that Defendant Matos had agreed to." (Id.) Plaintiff explains that "a code 339 transfer request was generated to transfer Plaintiff from FCI McDowell" and "[a] code 339 transfer request is used when there is an increase in an inmate's care level from 'one to a two.'" (Id., p. 6.) Plaintiff alleges that a "code 331 transfer was supposed to be generated as physical therapy is

3

normally limited to inmates at medical referral centers, which requires an inmate to have a care level of four." (Id.) Plaintiff, therefore, contends that Defendants "never intended that Plaintiff receive physical therapy." (Id.) Plaintiff claims that "it was nothing but a ploy to get Plaintiff and his complaining about his knee out of the Administration and Medical Department's hair." (Id.)

      Plaintiff alleges that he was evaluated by an orthopedist, Dr. Douglas E. Holford, on October 10, 2012. (Id., p. 7.) Plaintiff states that Dr. Holford noted as follows: "he does have positive posterolateral sign with increased recurvatum to his knee. He does have positive posterolateral drawer test. . . [Plaintiff] suffers from posterolateral rotatory instability." (Id.) Dr. Holford allegedly informed Plaintiff and Assistant Health Service Administrator Guerara, that Plaintiff's condition was difficult to treat surgically based on the following: "(1) the uncommonness of the particular injury; (2) Plaintiff's LCL has lost its normal elasticity and the torn portion of the ligament is in thin shreds, if he (Dr. Holford) tried to use stitches to reattach the LCL back to the point of the femur in which it tore, it may not hold." (Id.) Additionally, Dr. Holford further recommended that "Plaintiff receive and wear an ACL type brace to prevent Plaintiff from further injuring his knee." (Id.) Plaintiff alleges that the foregoing proves that PA Hill and Dr. Matos acted with negligence and deliberate indifference because they concluded that Plaintiff's injuries were healed and there was "no indication for Plaintiff to have an orthopedic consult." (Id.)

      Plaintiff further claims that he signed up for sick-call on November 2, 2012, December 20, 2012, January 4, 2013, January 10, 2013, and January 11, 2013, but was never seen by "any medical staff." (Id.) Plaintiff explains that he informed PA Ryan on January 10 and 11, 2013, that he had hyper-extended his knee causing him to suffer extreme pain and the inability to bend his knee. (Id.) Plaintiff alleges that PA Ryan instructed him to "watch the call-outs." (Id.) Plaintiff states that he

4

was evaluated by PA Ryan on January 17, 2013, and "his blood pressure was 160/95." (Id.) Plaintiff alleges that he explained to PA Ryan that his blood pressure was high due to his inability "to exercise even moderately due to pain and instability in his knee." (Id.) Plaintiff complains that PA Ryan focused on changing Plaintiff's blood pressure medications instead of addressing the pain and instability of his knee. (Id.)

Plaintiff alleges that he e-mailed the Health Service Administrator, Mrs. Rosario, on January 22, 2013, complaining of PA Ryan's failure to address his knee problem. (Id., p. 9.) Plaintiff states that Mrs. Rosario replied to his e-mail on February 21, 2013, stating that Plaintiff's "e-mail will be forwarded to the Clinical Director for review and if appropriate for scheduling an appointment." (Id.) Plaintiff complains that "[a]s of the present date, Plaintiff has not been scheduled to see the Clinical Director, Defendant Dr. Blocker, nor has Dr. Blocker contacted him." (Id.)

Plaintiff acknowledges that on February 13, 2013, he "was called to the Health Services Department by the AHSA Mr. Guevara and was issued the knee brace." (Id.) Plaintiff complains that he did not receive the knee brace until approximately four months after his appointment with Dr. Holford. (Id., pp. 8 and 9.) Plaintiff states that Dr. Holford was present at his February 13, 2013, appointment and Plaintiff informed Dr. Holford that he was continuing to have problems and had "hyperextended it twice since his last appointment." (Id., p. 10.) Plaintiff states that Dr. Holford examined his knee and "informed Plaintiff that he still had the same instability in his knee - - posterolateral rotatory instability." (Id.) Plaintiff asserts that he subsequently received a copy of Dr. Holford's written report concerning his evaluation of Plaintiff on February 13, 2013. (Id., p. 11.) Plaintiff alleges that Dr. Holford's written report "falsely stated that he informed Plaintiff that surgical intervention was not needed." (Id.) Plaintiff asserts that the report contains false information

5

because "[a]pproximately 4 month earlier on October 10, 2012, Dr. Holford stated that Plaintiff's condition was difficult to treat surgically and recommended that Plaintiff be given an ACL type brace wherefore the hyperextension would be prevented." (Id.) Plaintiff contends that Dr. Holford's report dated February 13, 2013, indicates that "surgery is not necessary – as if by some miracle Plaintiff's knee was all of a sudden cured." (Id.) Based on the foregoing, Plaintiff requests monetary relief. (Id., p. 12.)

By Order entered on February 25, 2014, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and ordered the Clerk to issue process upon Defendants Goode, Hill, Hogsten, and Matos upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 6.) By Proposed Findings and Recommendation entered the same day, the undersigned recommended that Defendants Blocker and Ryan be dismissed because the Court lacked personal jurisdiction. (Document No. 7.) Plaintiff paid his initial partial payment of the filing fee on March 17, 2014, and the Clerk issued process. (Document Nos. 9 - 11.) By Memorandum Opinion and Order entered on March 20, 2014, United States District Judge Faber adopted the undersigned's recommendation and dismissed Plaintiff's claims against Blocker and Ryan. (Document No. 12.)

On April 1, 2014, the United States filed its "Motion to Substitute" and Memorandum in Support. (Document No. 17 and 18.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 2, 2014, advising him of the right to file a response to the United States' "Motion. (Document No. 19.) On April 10, 2014, Plaintiff filed his Response stating that he had no objection to the United States' Motion. (Document No. 22.)

## **THE STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

In its Motion, the United States argues that Defendants Goode, Hill, Hogsten, and Matos should be dismissed and the United States substituted as the Defendant as to all alleged tort claims. (Document No. 17.) In support, the United States Attorney filed a "Certification" stating that Defendants Goode, Hill, Hogsten, and Matos were acting within the scope of their employment. (Document No. 27.) In Response, Plaintiff states that he "has no objection to substituting named defendants in their official capacity." (Document No. 22.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where

7

the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, William Goode, Carl Hill, Karen F. Hogsten, and Hippilton Matos, were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose."[2] (Document No. 27.) A United States Attorney's certification "is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir.

---

[2] Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question *de novo*. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying his burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

In his Response, Plaintiff states that he "has no objection to substituting named defendants in their official capacity." (Document No. 22.) As stated above, a United States Attorney's certification "is conclusive unless challenged." The undersigned, therefore, recommends that the United States' Motion to Substitute (Document No. 17.) be granted as to Plaintiff's FTCA claim.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' Motion to Substitute (Document No. 17.), and **REFER** this matter back to the undersigned

9

for further proceedings.

Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: April 15, 2014.

R. Clarke VanDervort
United States Magistrate Judge